**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2003-CP-01877-SCT**

*JESSICA POWERS  f/k/a  JESSICA R. McDONALD*

*v.*

*ERIC TIEBAUER*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/25/2003 |
| TRIAL JUDGE: | HON. H. DAVID CLARK, II |
| COURT FROM WHICH APPEALED: | NEWTON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | THOMAS T. BUCHANAN |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 08/25/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, P.J., GRAVES AND RANDOLPH, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     On March 21, 1999, Rachel Caitlin McDonald (Rachel) was born out of wedlock to Jessica Powers f/k/a Jessica McDonald (Powers).   Following a paternity test which established Eric Tiebauer as Rachel's natural father, a hearing was held to adjudicate the same.   Prior to the court's proposed final order, Tiebauer petitioned to change the surname of Rachel to his own despite Powers's objections.   The chancellor granted his petition, ordered that Rachel's surname be changed to Tiebauer, and later ruled that Powers had abandoned her claim in a subsequent hearing.   Powers now appeals, and we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     At the time of Rachel's birth, Tiebauer and Powers were adult residents of Mississippi, and both were unmarried.   Approximately eight months following Rachel's birth, Eric filed with the Chancery Court of Newton County, Mississippi a petition to determine paternity and for other relief.   The chancellor subsequently ordered the parties to submit to a paternity test which revealed that Eric was Rachel's biological father.   Thereafter, Eric filed a motion for summary judgment requesting that the chancellor enter an order declaring him the natural father of Rachel as well as to award him permanent visitation.

¶3.     On August 25, 2000, a hearing was held to adjudicate that Tiebauer was the biological father of Rachel based on the paternity test results.   A temporary visitation schedule was also established.   As the proposed final order was being drawn up by Tiebauer's attorney, a provision to change Rachel's surname was included despite the objections raised by Powers.   A second hearing was set for November 9, 2000, to obtain an order for other issues, including a determination of child support and Tiebauer's petition for the name change.   As the hearing commenced, Tiebauer's counsel informed the court that he had included a provision to the proposed final order changing Rachel's surname and that Powers opposed the change.   The chancellor granted the name change, noting that it was "a legislative matter, but I would probably do it, anyway."   On November 14, 2000, the chancellor entered a final order which included the following provision: "That Rachel McDonald shall have the name of Rachel McDonald Tiebauer; the birth certificate shall be changed to reflect the correct name of the minor child; as well as reflecting that Eric Tiebauer is the natural father of said minor child."

¶4.     On November 27, 2000, Powers filed a motion to alter or amend the judgment with regard to the name change.   She argued that changing Rachel's surname would necessitate

2

numerous changes to government documents including birth certificate, social security records, medical records, and school records. Further, Powers argued that the name change would result in emotional harm and confusion to Rachel. Neither Powers nor her counsel took any further action to set a hearing or otherwise prosecute the motion.

¶5.     A final hearing of paternity was set for July 27, 2003. With regard to Powers's motion to alter or amend, the chancellor ruled that since the motion sat dormant for almost three years, she had abandoned it. During the hearing, Tiebauer testified that it was important for Rachel to know that he is her natural father. He also testified that there were times when Rachel would refer to Powers' husband (Rachel's stepfather) as "daddy." Powers testified that Rachel did not know Tiebauer's last name and changing it would further confuse her. Relying upon Miss. Code Ann. § 93-9-9(1) (Rev. 2004), the chancellor ruled, "I see nothing [before] the court that would lead [me] to believe that it is in the best interest of this minor child that she have any name other than the name of her natural father." It is from this judgment that Powers timely appeals. She raises two issues on appeal, arguing that (1) the chancellor abused his discretion in ordering that Rachel's surname be changed to that of her non-custodial father because he failed to apply the "best interests of the child" standard, and (2) the paternal surname presumption of Miss. Code Ann. § 93-9-9(1) is an unconstitutional violation of the due process and equal protection clauses of the Fourteenth Amendment of the United States Constitution. We affirm for the reasons stated below.

## DISCUSSION

### I.     Standard of Review

¶6. While this Court will always review a chancellor's findings of fact, the Court will not disturb the factual findings of a chancellor when supported by substantial evidence unless the Court can say with reasonable certainty that the chancellor abused his discretion, was manifestly wrong, clearly erroneous or applied an erroneous legal standard. *Gannett River States Publ'g Corp. v. City of Jackson,* 866 So.2d 462, 465 (Miss. 2004); *Morgan v. West,* 812 So.2d 987, 990 (Miss. 2002) (citing *Cummings v. Benderman*, 681 So.2d 97, 100 (Miss. 1996); *Ivison v. Ivison,* 762 So.2d 329, 333 (Miss. 2000); *Miss. State Tax Comm'n v. Med. Devices, Inc.,* 624 So.2d 987, 990 (Miss. 1993)). When reviewing questions of law, this Court employs a de novo standard of review and will only reverse for an erroneous interpretation or application of law. *Morgan v. West,* 812 So.2d at 990; *Bank of Miss. v. Hollingsworth,* 609 So.2d 422, 424 (Miss. 1992); *Harrison County v. City of Gulfport,* 557 So.2d 780, 784 (Miss. 1990).

## II.   Chancellor's Order to Change Rachel's Surname.

¶7. The order entered by the chancellor on November 14, 2000, was a final determination as to paternity and the change of Rachel's surname. The order was "temporary" only as it related to custody, support, and visitation, with these issues to be ultimately settled at a final hearing that did not occur until July 17, 2003. In fact, the ordered was entitled "Order of Paternity; and of Temporary Custody, Support, and Visitation." After the chancellor ordered that Rachel's surname be changed to Tiebauer in November of 2000, Powers then challenged the name change via a Motion to Alter or Amend. However, as the chancellor noted at the final hearing in 2003, she took no action to notice the motion, set a hearing date, or otherwise pursue an adjudication of the motion until she objected to the name change at the final hearing

4

on custody, support, and visitation. The chancellor found that Powers's failure to pursue the motion should be deemed an abandonment of the claim. We find that the facts support the chancellor's finding that Powers abandoned her claim; therefore, his decision was not an abuse of discretion. Accordingly, we decline to address the merits of Powers's argument that the chancellor failed to consider the "best interests of the child" standard in ordering that Rachel's surname be changed to that of her biological father, Eric Tiebauer.

### III. Constitutionality of Miss. Code Ann. § 93-9-9(1).

¶8. Powers also alleges that Miss. Code Ann. § 93-9-9(1) (Rev. 2004)[1] contains a paternal surname presumption that violates the due process and equal protection clauses in the Fourteenth Amendment to the U.S. Constitution. U.S. Const. amend. XIV, § 1. Tiebauer argues that Powers's constitutional challenge to this statute has been waived since she failed to assert it in any of the prior proceedings. This Court's general policy is that "errors raised for the first time on appeal will not be considered, especially where constitutional questions are concerned." *Stockstill v. State*, 854 So. 2d 1017, 1023 (Miss. 2003) (quoting *Marcum v. Hancock County Sch. Dist.*, 741 So. 2d 234, 238 (Miss. 1999)).[2] Powers acknowledges this rule yet argues that her case should not be procedurally barred because it involves a

---

[1] Miss. Code Ann. § 93-9-9(1) states in part that "[i]n the event of court-determined paternity, the surname of the child shall be that of the father, unless the judgment specifies otherwise."

[2] *See also* **Cockrell v. Pearl River Valley Water Supply Dist.**, 865 So. 2d 357, 360 (Miss. 2004) (stating that procedural bar of constitutional claim will only be excused in unusual circumstances); **In re V.R.**, 725 So. 2d 241, 245 (Miss. 1998) (finding that a party raising a separation of powers argument is not excused from first raising it at trial); **Colburn v. State**, 431 So. 2d 1111, 1114 (Miss. 1983) (stating that questions not presented to trial court will not be reviewed on appeal).

fundamental right. She cites to *Maston v. State*, 750 So. 2d 1234, 1237 (Miss. 1999), for the proposition that a procedural bar will not be enforced against a party when that party has a "fundamental constitutional right" that will be affected.

¶9. In *Maston*, the defendant did not file a direct appeal of his conviction yet attempted to raise an ineffective assistance of counsel claim via a Motion for Post-Conviction Relief several years later, which the trial court denied. *Maston*, 750 So. 2d at 1235. Though the *Maston* Court noted an exception to procedural bars when fundamental constitutional rights are at issue, it affirmed the trial court's decision to deny relief and stated that "this Court has never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar." *Id*. at 1237. Powers also seeks to support her position with two cases cited in *Maston*, where this Court refused to enforce a procedural bar against the due process claims brought by convicted felons.

¶10. In *Smith v. State*, 477 So. 2d 191 (Miss. 1985), the defendant received a life sentence as a habitual offender under the greater of two repeat offender statutes. He did not challenge the constitutionality of his sentencing on appeal but rather on a pro se post-conviction motion to correct sentence. *Smith*, 477 So. 2d at 195. The State's indictment of the defendant indicated that the State was seeking to convict and sentence him under a statute for which the maximum sentence would be seven years in prison, rather than the statute actually used to sentence him to life imprisonment. *Id*. at 196. The *Smith* Court refused to enforce a procedural bar against a defendant's claim because the facts of the case indicated a clear denial of due process in the sentencing and that "[t]he comparison of a seven year sentence, as

6

opposed to a life sentence, without probation or parole is too significant a deprivation of liberty to be subjected to a procedural bar." *Id*. at 195.

¶11. We also refused to procedurally bar a defendant's constitutional claim in *Luckett v. State*, 582 So. 2d 428 (Miss. 1991). In *Luckett*, the defendant pleaded guilty to a charge of forcible rape and the judge sentenced him to life imprisonment, though state statutes only allowed a jury to fix a life sentence for this crime. *Id.* at 430. The defendant sought to vacate his conviction and sentence nine years later, and this Court excepted his untimely challenge to the sentence from the applicable statute of limitations because the trial court's actions clearly constituted a denial of due process in sentencing. *Id*. at 429-30.

¶12. Powers argues that she has a fundamental right, as a mother, to retain the birth name given to her child, even after paternity has been established and that the paternal presumption in Miss. Code Ann. § 93-9-9(1) constitutes both a due process and equal protection violation of those rights. For this reason, she claims that her constitutional claim should not be procedurally barred from initial consideration on appeal. She acknowledges that neither the United States Supreme Court nor this Court have addressed whether the name of a child is a constitutionally protected right. However, she requests that this Court acknowledge that she has a fundamental right in choosing the name of her child and, as support for her argument, cites to other jurisdictions that have recognized such a right. See *Jech v. Burch*, 466 F. Supp. 714, 721 (D. Haw. 1979) (finding parents have constitutional right to give child any surname they choose); *Roe v. Conn*, 417 F. Supp. 769, 783 (M.D. Ala. 1976) (finding illegitimate child has liberty interest at stake when his name is altered); *Jones v. McDowell*, 281 S.E.2d 192,

7

194 (N.C. Ct. App. 1981) (holding mother of illegitimate child has a constitutionally protected interest in retaining surname given to child at birth).

¶13. Tiebauer cites authority from other jurisdictions that do not recognize a parent's fundamental constitutional right in the name of his/her child. See *Brill v. Hedges*, 783 F. Supp. 333, 339 (S.D. Ohio 1991) (finding parent has no "fundamental" right in naming child that would trigger strict scrutiny analysis in due process or equal protection challenge); *Fulghum v. Paul*, 192 S.E.2d 376, 377 (Ga. 1972) (finding no one, parent included, has property interest in the name of another.

¶14. Both of the cases cited by Powers to support her argument that a procedural bar is improper in the instant case, involve criminal convictions. In *Smith*, the defendant was deprived of due process because he was sentenced under a harsher "repeat offender" statute than the statute under which he was indicted. In *Luckett*, the judge committed plain error by giving the defendant a life sentence when the statute did not authorize him to do. *Smith* and *Luckett* are distinguishable from the instant case.

¶15. Tiebauer's original petition did not state that he was seeking a name change, though it did invoke Miss. Code Ann. § 93-9-9, the statute Powers claims is unconstitutional. However, Tiebauer's Motion for Summary Judgment and for Temporary and Permanent Relief did contain a request for a name change. The record reflects that Tiebauer provided Powers with notice of this motion prior to the initial hearing in August of 2000. Powers opposed the name change at the initial hearing and at the second hearing on November 9, 2000, yet made no constitutional argument at either time. She made no challenge to the constitutionality of Section 93-9-9(1) in her Motion to Alter or Amend. Also, the record of the hearing held in

8

July of 2003 contains no evidence that Powers sought to declare Miss. Code Ann. § 93-9-9(1) unconstitutional. Tiebauer and the trial court were first apprised of Powers's constitutional challenge when she appealed to this Court.

¶16. Unlike the judges in *Smith* and *Luckett*, the chancellor in the instant case did not render a decision that was in direct violation of a statute, so as to implicate the fundamental due process rights which warranted an exception to the procedural bar in those cases. Furthermore, though other jurisdictions have established that a parent has a fundamental constitutional right in his/her child's name, this Court has yet to recognize that such a right is fundamental, so as to except Powers from the procedural bar against raising constitutional claims for the first time on appeal, and we decline to address the issue in this case.

¶17. Additionally, the Attorney General received no notice of Powers's constitutional challenge until he received her appellate brief. He requests that this Court enforce the procedural bar against Powers's constitutional claim for failure to comply with the notice requirement of Mississippi Rules of Civil Procedure (MRCP) 24(d).[3] We have procedurally barred previous challenges to the constitutionality of a statute because of a party's failure to notify the Attorney General. See *Cockrell*, 865 So. 2d at 360 (citing *Pickens v. Donaldson*, 748 So. 2d 684, 691-92 (Miss. 1999)); *Barnes v. Singing River Hosp. Sys.*, 733 So. 2d 199, 202-03 (Miss. 1999)). We find this rule applicable to the instant case. Hence, Powers is

---

[3] M.R.C.P. 24(d) states in part:
In any action . . . for declaratory relief brought pursuant to Rule 57 in which a declaration or adjudication of the unconstitutionality of any statute of the State of Mississippi is among the relief requested, the party asserting the unconstitutionality of the statute shall notify the Attorney General of the State of Mississippi within such time as to afford him an opportunity to intervene and argue the question of constitutionality.

procedurally barred from raising her constitutional challenge to Miss. Code Ann. § 93-9-9(1) for the first time on appeal.

## CONCLUSION

¶18. We hold that the chancellor did not abuse his discretion in finding that Powers abandoned her challenge to Rachel's name change. We also hold that Powers is procedurally barred from challenging the constitutionality of Miss. Code Ann. § 93-9-9(1). Accordingly, we affirm the judgment of the Newton County Chancery Court.

¶19. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ, J., NOT PARTICIPATING.**