FAIR, J.,
for the Court:
¶ 1. Albert Watts was convicted of armed robbery and sentenced to life imprisonment as a habitual offender. On appeal, Watts argues: (1) the trial court erred in not declaring a mistrial or instructing the jury to disregard the testimony of State witness Judice Eubanks, and (2) the trial court improperly sentenced him as a habitual offender. We affirm Watts’s conviction but remand for resentencing.
FACTS
¶ 2. On November 25, 2011, Maria Luna was the only employee working the cash register at the U-Stop convenience store in Carthage, Mississippi. Luna had her two daughters with her inside the store. Sometime after 6 p.m., Jose Pla-sencia entered the store and asked to use the restroom. When Plasencia came back to return the key, Watts entered the store. Watts had a screwdriver in his hand and had the hood on his sweatshirt pulled over his head. Holding the screwdriver, Watts demanded money and threatened to take Luna’s children if she did not cooperate. At Watts’s command, Luna opened the cash register and the safe. She then ran *1064 outside the store with her children and called the police. Carthage police officers arrived and talked to Luna about what happened. Later that day, the police showed Luna a photo lineup. She identified Watts as the man with the screwdriver. Watts was arrested and charged with armed robbery.
¶ 3. Luna testified at trial and identified Watts again in the courtroom as the man with the screwdriver. The State also subpoenaed Eubanks, the girlfriend of Pla-sencia. Eubanks testified that, on the day of the robbery, Plasencia and Watts were at her house drinking and smoking. Watts asked her and Plasencia to drive him to the store; both men went inside while she remained in the van. She said Plasencia then walked outside and told her that Watts was robbing the place. At that time, Eubanks saw a lady and two young girls walk outside the store. She testified that shortly thereafter, Watts walked out of the store and entered the van. During cross-examination, Eubanks stated that she did not see anything that occurred inside the store. Toward the end of her cross-examination, she admitted that she had consumed “half a case” and a bottle of wine before she testified. On redirect, Eubanks testified that her testimony was consistent with the statement she gave police on the day of the robbery. On recross, she admitted that she also had been drinking the day of the robbery. Neither the State nor defense counsel made any objections. At the close of her testimony, the judge ordered Eubanks to serve three days in jail and pay a $100 fine.[1]
¶ 4. On September 5, 2012, Watts was convicted and sentenced as a habitual offender to life imprisonment, without the possibility of parole, probation, or suspension or reduction of his sentence under Mississippi Code Annotated section 99-19-83 (Rev.2007). Watts now appeals.
DISCUSSION
1. Eubanks’s Testimony
¶ 5. Watts argues that the trial court denied him a fundamentally fair trial by failing to declare a mistrial based on the following testimony by Eubanks during cross-examination, or to instruct the jury to disregard the testimony:
Q: When you were in Court earlier today, you left the Court and went home?
A: Yes, sir. Reason why, because when they called Jose [Plasencia’s] name and stuff, I asked Kevin Cross do I have to be here, and Kevin told me no, so that’s the reason I left.
Q: And you’ve been back at your house during this time?
A: Yes, sir.
Q: Okay. Have you had anything to drink today?
A: Oh, yes, sir. I told the police that when they got me a while ago, because I am an alcoholic and I ain’t going to deny it from the heart and I’m not going to deny it from you.
Q: Okay. How much have you had to drink today?
A: I done drunk like a half a case and wine.
Q: Half a case and wine?
A: Yes, sir.
¶ 6. “[Wjhen anything transpires during the trial that would tend to prejudice the rights of [the] defendant, he must ask the trial court for a mistrial upon *1065 the happening of such occurrence when the same is of such [a] nature as would entitle him to a mistrial.” Smith v. State, 90 So.3d 122, 126 (¶ 9) (Miss.Ct.App.2012) (quoting Blackwell v. State, 44 So.2d 409, 410 (Miss.1950)). Additionally, this Court has held that “[a] contemporaneous motion for a mistrial ‘is critical because it allows the judge to avert a mistrial, if possible, by admonishing the jury to disregard the utterance.’” Id. (quoting Knight v. State, 751 So.2d 1144, 1154 (¶ 26) (Miss.Ct.App.1999)). As the State points out, at no point did Watts move for a mistrial or object to Eubanks’s testimony. “Failure to raise an issue at trial bars consideration on an appellate level.” Birkhead v. State, 57 So.3d 1223, 1237 (¶ 48) (Miss.2011) (quoting Walker v. State, 913 So.2d 198, 217 (¶ 49) (Miss.2005)).
¶ 7. Although Watts fails to offer applicable support for his assertion that he was denied the right to a fundamentally fair trial, he does cite to Griffin v. State, 557 So.2d 542, 552 (Miss.1990), in support of his argument that reversal is required absent any objection at the trial court level. In Griffin, the court stated that where the prosecutor comments on the defendant’s right not to testify, reversal may be required even absent a contemporaneous objection. However, Watts is not alleging the State made prejudicial comments regarding Watts’s right not to testify. Watts instead argues that Eubanks’s testimony denied him the right to a fundamentally fair trial. For the foregoing reasons, we find that Watts is procedurally barred from raising this issue on appeal.
2. Watts’s Habitual-Offender Sentence
¶ 8. Watts also claims that the trial court erred in sentencing him as a habitual offender under section 99-19-83, because the State failed to prove that he served separate terms of at least one year on each of his prior convictions. In Long v. State, 52 So.3d 1188, 1195-96 (¶ 26) (Miss.2011), our supreme court stated:
Pursuant to Mississippi Code Section 99-19-83, the maximum term of life imprisonment will be imposed if the State can prove beyond a reasonable doubt that the defendant has previously been convicted of two or more felonies on charges separately brought and arising out of separate indictments at different times, that the defendant was sentenced to and served separate terms of one year or more in any state or federal penal institution, and that at least one such felony was a crime of violence.
Long, 52 So.3d at 1195-96 (¶ 26) (upholding habitual-offender enhancement where State showed defendant had been convicted of three felonies on two separate occasions and had served separate terms of more than one year in prison on each conviction). “An essential [element] of ... section [99-19-83] is that the defendant shall have served at least one year under each sentence.” Ellis v. State, 485 So.2d 1062, 1064 (Miss.1986).
¶ 9. The State introduced into evidence certified copies of two sentencing orders. On December 16, 1992, Watts pled guilty to two charges arising out of separate indictments — burglary of a storehouse and robbery. The State concedes that it was required to show evidence of the length of time served for each conviction. Because the State did not prove beyond a reasonable doubt that Watts served a term of at least one year on each sentence, this Court finds that the trial court erred in sentencing Watts as a habitual offender under section 99-19-83. Accordingly, we reverse and remand for resentencing under Mississippi Code Annotated section 99-19-81. See Ellis, 485 So.2d at 1064.
*1066 U10. THE JUDGEMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY IS AFFIRMED. THE SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS REVERSED, AND THIS CASE IS REMANDED FOR RESEN-TENCING CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND LEAKE COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND JAMES, JJ„ CONCUR.

. At the end of the day, the judge allowed Eubanks to go home and waived the fine.